**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION**

| | | |
|---|---|---|
| MARISELA COVARRUBIAS, | ) | Case No. ED CV 15-01070-AS |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION AND** |
| | ) | |
| v. | ) | **ORDER OF REMAND** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

On June 1, 2015, Plaintiff filed a Complaint seeking review of the denial of her application for Disability Insurance Benefits. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 12-13).

On October 5, 2015, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 15-16). The parties filed a Joint Position Statement ("Joint Stip.") on February 16, 2016, setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 21).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15; "Order Re: Procedures In Social Security Case," filed June 5, 2015 (Docket Entry No. 9).

### BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff, formerly employed as a press machine operator and a tile painter (see AR 37-38, 214), filed an application for Disability Insurance Benefits on March 15, 2012, alleging an inability to work because of her disabling condition since November 27, 2007. (AR 185-88). On January 25, 2013, the Administrative Law Judge ("ALJ"), Jennifer A. Simmons, heard testimony from Plaintiff and vocational expert Alan Ey. (See AR 32-56). On November 5, 2013, the ALJ issued a decision denying Plaintiff's application. (See AR 17-25). After determining that Plaintiff had severe impairments -- "history of kidney stones, a history of anemia, hypertension, asthma and obesity" (AR 19)[1] --, the ALJ found that Plaintiff had the residual functional capacity

_____

[1]     The ALJ found that Plaintiff's other impairments -- leg and wrist pain, arthritis, and mental ("feeling sad and not wanting to talk") -- were not medically determinable. (AR 20).

2

("RFC")[2] to perform light work[3] with the following limitations: climbing, balancing, stooping, kneeling, crouching and crawling frequently; and avoidance of even moderate exposure to pulmonary irritants such as fumes, dusts, gases and environmental irritants.  (AR 21-24).  Finding that Plaintiff was capable of performing her past relevant work as a tile decorator as actually performed and as generally performed in the national economy, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 24-25).

Plaintiff requested that the Appeals Council review the ALJ's decision.  (AR 7).  The request was denied on April 14, 2015.  (AR 1-3).  The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision.  See 42 U.S.C. §§ 405(g), 1383(c).

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ erred in failing to properly: (1) develop and consider the relevant medical evidence pertaining to Plaintiff's physical impairments, including anemia; (2) consider Plaintiff's subjective complaints and assess her credibility; and (3) develop and consider the relevant evidence regarding Plaintiff's ability

---

[2]    A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations.  See 20 C.F.R. § 404.1545(a)(1).

[3]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

to perform her past relevant work as a tile decorator/painter. (See Joint Stip. at 3-5, 8-11, 15-19).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's first claim of error has no merit.  However, the Court finds that Plaintiff's second claim of error has merit and warrants a remand for further consideration.  Since the Court is remanding based on Plaintiff's second claim of error, the Court will not address Plaintiff's third claim of error.

**A.   The ALJ Properly Considered Evidence of Plaintiff's Anemia Condition**

Plaintiff asserts that ALJ "has improperly miminimized and/or ignored Plaintiff's anemia condition and the significant effect that it has on Plaintiff's ability to sustain work related activities[.]" (Joint Stip. at 4-5).  Defendant asserts that the ALJ properly considered Plaintiff's history of anemia in determining Plaintiff's work limitations.  (Joint Stip. at 5-8).

After finding that Plaintiff had the severe impairments stated above (including a history of anemia), the ALJ wrote:

I have given the claimant every benefit of the doubt in the above finding.  The evidence of record could equally support a finding that the following impairments are either not medically determinable or not "severe": history of kidney

4

stones, history of anemia, and hypertension.[4]   The record indicates the claimant's anemia is stable on iron tablets, and her history of hypertension is stable on medications, with no continued treatment for kidney stones.   Because such impairments could have been found to have only a minimal effect on the claimant's ability to perform basic work activities, there may not always be a direct correlation between the individual's impairments in the finding above and the functional limitations in the finding of the claimant's residual functional capacity (RFC) stated later in this decision.   The RFC finding took into consideration all non-severe impairments as well.

(AR 19-20, footnote in original).

Plaintiff assertion that the ALJ used the phrase "history of anemia" to minimize Plaintiff's anemia condition (see Joint Stip. at 4), is belied by the record which supports the ALJ's finding that one of Plaintiff's severe impairments was a "history of anemia." (See AR 499 [a June 20, 2011 Progress Note appears to assess Plaintiff with a history of anemia], 508 [a December 12, 2011 Progress Note appears to assess Plaintiff with a history of anemia], 378 [a March 14, 2012 record from Woman to Woman's Obstetrics and Gynecology Medical Group stated that Plaintiff's past medical history included anemia]), 408 [a June 21, 2012

---

[4]   For example, the impairments are "severe" only if considered in conjunction with other impairments; or are questionably medically determinable (i.e., the evidence of medical determinability is questionable at best); or are marginally "severe" (ie, the level of severity is slight or marginal).

report of an internal medicine consultation stated that Plaintiff had "a history of iron-deficiency anemia"], and 413 [an April 1, 2012 report of a sinus consultation stated that Plaintiff's past medical history included anemia]); see also AR 498 [a January 31, 2011 Progress Note contains an assessment of anemia], 503 [an August 3, 2011 Progress Note contains an assessment of anemia]), and 370 [a May 23, 2012 record from Woman to Woman Obstetrics and Gynecology Medical Group contains an assessment of menorrhagia complicated by anemia]).

Plaintiff's challenge to the ALJ's statement that "[t]he record indicates the claimant's anemia is stable on iron tablets" (see Joint Stip. at 4), is without merit.  The ALJ's statement was supported by a September 18, 2012 medical record from Woman to Woman Obsetrics and Gynecology Medical Group (see AR 523 [noting that Plaintiff had reported decreased vaginal bleeding and cramping and that she was very pleased, and that iron tablets had increased her hemoglobin level on August 1, 2012]).

The Court also rejects Plaintiff's claim that the ALJ did not adequately consider Plaintiff's work limitations caused by her anemia condition (see Joint Stip. at 4-5), and finds that the ALJ sufficiently considered the records of Plaintiff's anemia in determining Plaintiff's RFC.

Plaintiff claims that she "was noted to be anemic on blood testing" performed on various dates.  (See Joint Stip. at 5, citing AR 440 [July 7, 2008], 446 [May 5, 2009], 322 [July 27, 2009], 308 [August 26, 2009], 454 [January 6, 2010], 286 [March 11, 2010], 491 [October 19, 2010], 500

[June 22, 2011], 504 [August 9, 2011], 509 [December 14, 2011], 391 [June 1, 2012], 390 [June 4, 2012], 518, 522 [August 1, 2012], and 534 [April 18, 2013]).  However, while the blood tests mostly indicated, among other things, that Plaintiff's levels of hemoglobin and hematocrit were low, they did not show, by themselves, that Plaintiff was anemic.  See www.nhlbi.nih.gov/health/health-topics/topics/bdt/types (last visited April 13, 2016) ["Abnormal hemoglobin levels may be a sign of anemia, sickle cell anemia, thalassemia . . . , or other blood disorders."; "A low hematocrit level might mean you have anemia.  Abnormal hematocrit levels also may be a sign of a blood or bone marrow disorder."].

As the ALJ found, Plaintiff "received little to no treatment for any complaint of anemia" from later (sic) 2010 to early 2012.  (AR 23).  On January 31, 2011, June 20, 2011, August 3, 2011, and December 12, 2011, Plaintiff's treating physician assessed Plaintiff with anemia or a history of anemia. (See AR 498-99, 503, 508).  On June 20, 2011 and August 15, 2011, Plaintiff obtained her prescribed iron supplements. (See AR 525).

The records after early 2012 do not show that Plaintiff's ability to perform work activities was affected by her anemic condition.  On March 14, 2012, Plaintiff's gynecologist noted Plaintiff's past history of anemia, diagnosed Plaintiff with menorrhagia (heavy menstrual bleeding), and referred Plaintiff for additional testing.  (See AR 378). On March 20, 2012 (based on Plaintiff being referred for evaluation of "unexplained anemia"), a colonoscopy revealed two polyps, one of which was removed and one of which was dessicated.  (See AR 473-77).  On April 11, 2012 and May 8, 2012, Plaintiff obtained her prescribed iron

supplements. (See AR 527). On May 23, 2012 (following an endometrial biopsy), Plaintiff's gynecologist diagnosed Plaintiff with menorrhagia complicated by anemia and prescribed iron tablets. (See AR 370). On June 5, 2012, July 3, 2012, and August 27, 2012, Plaintiff obtained her prescribed iron supplements. (See AR 528-29). On September 18, 2012, Plaintiff's gynecologist noted that Plaintiff had reported decreased vaginal bleeding and cramping, and that iron tablets had increased Plaintiff's hemoglobin level on August 1, 2012; and did not include anemia in the diagnosis. (See AR 523). On October 16, 2012, November 12, 2012, December 10, 2012, and February 4, 2013 (which was after December 31, 2012, Plaintiff's date last insured, see AR 19), Plaintiff obtained her prescribed iron supplements. (See AR 529-30). A blood test on April 18, 2013 indicates that Plaintiff's hematocrit level was not low. (See AR 534).

There are no opinions from any medical providers concerning work limitations caused by Plaintiff's anemia. Plaintiff has failed to cite to any evidence in the record showing that her anemia limited her ability to perform work activities. See Tacket v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) ("The burden of proof is on the claimant as to steps one to four.").

To the extent that Plaintiff's relies on her hearing testimony to support this claim of error (see AR 5), the Court will address Plaintiff's testimony in the section immediately below.

**B.    The ALJ Did Not Properly Assess Plaintiff's Credibility**

Plaintiff asserts that the ALJ failed to state clear and convincing reasons for finding her testimony not credible. (See Joint Stip. at 8-11).  Defendant asserts that the ALJ provided valid reasons for finding Plaintiff not fully credible. (See Joint Stip. at 11-15).

Plaintiff testified at the administrative hearing as follows (see AR 37-51)[5]:

> She lives in an apartment with a roommate.  She used to live with her son, but one week ago her son went away to college.  She was living on food stamps and AFDC since 2007 (but the AFDC was taken away when her son turned 19). (See AR 40-41, 48, 55).

> She last worked in 2007, as a tile painter.  She cannot work as a tile painter because she cannot lift much weight, move a lot, stand up or walk much.  She has had pain in her legs and feet for about two years.  She can stand for about 15 to 20 minutes before she has to sit down.  She can hold only a gallon of milk, using both hands.  She has had bad pain in her wrist and fingers for about two years. (See AR 38, 43-44).

---

[5]    At the beginning of the administrative hearing, Plaintiff's counsel stated that Plaintiff was unable to work because of recurring kidney stones, stents placed in the right kidney, recurring urinary tract infections, abdominal pain in the kidney area, anemia, shortness of breath, leg pain, foot pain, hand pain, wrist pain, musculoskeletal pain, fatigue, decreased energy, and depression. (See AR 36-37).

1

2   She has problems with her right kidney.  She does not
3   have big kidney stones like before (she had two or three
4   surgeries in 2009 and/or 2010); her kidney now has grit sand.
5   She feels pain below her kidney when she moves or exercises.
6   (See AR 38-39).

7

8   She has asthma.  She had asthma when she worked.  She has
9   had to use an inhaler more frequently the past two years.
10  (See AR 40).

11

12  She has anemia.  Her gynecologist is the only doctor
13  treating her anemia.  Her gynecologist told her to keep on
14  taking iron.  Her gynecologist had her undergo a colonoscopy
15  to check out her bleeding.  (See AR 49-51).

16

17  She feels tired and fatigued all of the time.  When she
18  feels agitated or does exercise, she gets asthma and feels
19  pain.  (See AR 40).

20

21  When asked what bothers her the most, she responded, "The
22  arthritis, my anemia, I get a lot of dizziness and the sinus
23  problem I have."  (See AR 49).

24

25  She takes medicine for pain.  She takes Tramadol and
26  Naproxen for pain in the tailbone (she had fallen this year).
27  She takes Ibuoprofen 600 mg for her arthritis (she has taken
28  it for more than one year).  She takes an iron pill for her

10

anemia (she takes it as prescribed; the doctor has not increased the dosage).   (See AR 41-42, 46-48).

She is not able to do much.   For 6 hours (between breakfast and dinner), she sits or reclines with her feet up. She cooks for herself.   She barely cleans the apartment.   She washes a few dishes (she cannot do dishes because she drops them due to the weight).   She mops the floor (but not every day because of pain in her feet and fingers).   She goes shopping (but for no more than one hour).   (See AR 40-44).

After briefly summarizing the statements Plaintiff made to the internal medicine consultative examiner on or about June 21, 2012 ("The claimant alleges she is 'disabled' and unable to work because of pain 'sometimes in her arms and sometimes in her legs,' a history of iron-deficiency anemia, a history of hypertension and a history of asthma. (Ex. 5F/1).")  as well as Plaintiff's testimony at the hearing ("[T]he claimant testified that she was unable to work because she 'has had kidney stones, anemia, stents placed in the right kidney, recurring urinary tract infections, a complaint of right-sided abdominal pain, decreased energy, and she spends a lot of time lying down.'") (AR 22), the ALJ addressed Plaintiff's credibility as follows:

. . . [A]fter careful consideration of the evidence, the undersigned finds that the claimant's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely credible for the reasons explained in this decision . . . .

11

The claimant has not received the type of medical treatment one would expect for a totally disabled individual, with relatively infrequent trips to the doctor for the allegedly disabling symptoms for treatment that has been essentially routine and/or conservative in nature. The claimant alleges she became "disabled" and unable to work beginning on November 27, 2007, but yet the claimant has no medical treatment records around such time which would indicate that she presented to any medical provider to report such a life-altering event having occurred which required her to cease working. Records in October 2007 indicate blood work results, with a November abdominal ultrasound providing an impression of "right kidney appears to be mostly cystic," and further evaluation by CT was suggested (Ex. 7F), with the claimant's next record 5 months later indicating kidney stones. The claimant was subsequently treated conservatively with medication for urinary tract infection. (Ex. 9F). The claimant was seen by Dr. Franklin, MD, in July 2008, with treatment for kidney stones, with the claimant ultimately needing surgery with stent placement in 2009. Subsequent examinations were generally within normal limits, however, a difficulty with kidney stones reoccurred, and in April 2010 the claimant again underwent surgery for kidney stones. Subsequent records in June relay findings of small poorly functioning right kidney with evidence of right renal stones, and cystocele, however Dr. Chu relayed the claimant "now has sand and not stones." (Ex. 1F; 4F). A comparison study of November 2010 furthermore found no evidence of intra-abdominal

pathology (Ex. 4F/9), with negative urinalysis (Ex. 4F/2), and the claimant's only medical treatment record in 2011 shows a follow-up with findings of "last KUB showed 3 small stones, no complaints, her KUB today showed no stone at all" (Ex. 4F/6) and a presentation for "runny nose, congestion" in October 2011. (Ex. 12F/6). It is furthermore noted that during this exam, the claimant otherwise denied any other complaints, reporting no weakness or difficulty ambulating. The claimant does not return again until March 2012. Thus, the record fails to show any indication that the claimant reported to any physica[n] that she had become "disabled" and unable to work years earlier on November 27, 2007, and while the claimant had been treated for kidney stones, the record reflects treatment was generally successful in relieving symptoms. Further still, the fact that the claimant had gone from later 2010 to early 2012 without any medical treatment for her allegedly debilitating impairments detracts from her credibility, and it is further noted that while the claimant had been treated for kidney stones as already discussed above, the claimant received little to no treatment for any complaint of anemia, hypertension, or asthma during this time period.

It is furthermore noted that in her return in March 2012, this presentation was for gynecology, and not for any complaint as stated in the claimant's disability report or in her testimony at the hearing (Ex. 2F), with a colonoscopy indicating removal of colon polyps by snare, and now "unexplained anemia" (Ex. 11F), with a September 2012 follow-

13

up indicating "symptoms resolved and the claimant 'very pleased.'" (Ex. 14F/3). The claimant presented elsewhere in April with a complaint of, for the first time, sinus problems (Ex. 6F), with Dr. Nguyen assessing acquired deviated nasal septum, chronic maxillary sinusitis, and hypertrophy of nasal turbines, and recommending a septoplasty and sinus surgery. (Ex. 3F; *see also* 13F). However, no such surgery, or any other treatment for that matter, has been undergone not only through the claimant's date last insured but through the date of the claimant's hearing as well.

As already mentioned, the claimant remains insured through December 31, 2012. The claimant has no medical treatment records after September 2012, until lab work in April 2013, with a complaint of sinusitis at that time, as well as left shoulder pain (Ex. 17F), with x-ray showing normal sacrum and coccyx, moderate L5-S1 disc space narrowing with associated L5-S1 spondylolistesis (Ex. 15F), and a later September 2013 renal ultrasound indicated a probable left kidney cyst. Thus, the claimant is not seen with any complaint of pain "sometimes in her arms and sometime in her legs," anemia, hypertension, asthma, or decreased energey and a need to "spend a lot of time lying down," as reporting/testified (sic) by the claimant.

(AR 22-23).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of

14

the subjective symptoms.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281 (9th Cir. 1996); <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 1991).  Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her pain and symptoms only by articulating specific, clear and convincing reasons for doing so.  <u>Brown-Hunter v. Colvin</u>, 798 F.3d 749, 755 (9th Cir. 2015)(citing <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1036 (9th Cir. 2007)); <u>see also</u> <u>Smolen v. Chater</u>, <u>supra</u>; <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998); <u>Light v. Social Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997).  Because the ALJ does not cite to any evidence in the record of malingering, the "clear and convincing" standard stated above applies.

Here, the ALJ failed to provide clear and convincing reasons for finding that Plaintiff's testimony about the intensity, persistence and limiting effects of the symptoms was not fully credible.[6]

First, the ALJ failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" <u>Parra v. Astrue</u>, 481 F.3d 742, 750 (9th Cir. 2007) (quoting <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995)); <u>see also</u> <u>Smolen v. Chater</u>, <u>supra</u>, 80 F.3d at 1284 ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion").

---

[6]     The Court will not consider reasons for finding Plaintiff not fully credible (<u>see</u> Joint Stip. at 14) that were not given by the ALJ in the Decision.  <u>See</u> <u>Pinto v. Massanari</u>, 249 F.3d 840, 847-48 (9th Cir. 2001); <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196 (1947).

1    Second, the ALJ's partial discrediting of Plaintiff's testimony

2  based on Plaintiff's "relatively infrequent trips to the doctor for the

3  allegedly disabling symptoms for treatment" (see AR 22-23) was improper,

4  because the ALJ did not ask Plaintiff why she did not seek earlier or

5  more medical treatment.  See Social Security Ruling 96-7p ("[T]he

6  individual's statements may be less credible if the level or frequency

7  of treatment is inconsistent with the level of complaints. . . .

8  However, the adjudicator must not draw any inferences about an

9  individual's symptoms and their functional effects from a failure to

10  seek or pursue regular medical treatment without first considering any

11  explanations that the individual may provide, or other information in

12  the case record, that may explain infrequent or irregular medical visits

13  or failure to seek medical treatment.").[7]

14

15    Third, the ALJ did not properly discredit Plaintiff's testimony

16  based on the conservative nature of treatment for kidney stones, anemia,

17  hypertension, asthma, and sinus problems (see AR 22-23).  Evidence of

18  conservative treatment may be considered in a credibility determination.

19  Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of

20  'conservative treatment' is sufficient to discount a claimant's

21  testimony regarding severity of an impairment[.]").  However, the ALJ

22  has failed to show that Plaintiff only obtained a conservative course of

23  treatment for her kidney stones, anemia, hypertension, asthma and sinus

24  problems.  See Childress v. Colvin, 2014 WL 4629593, *12 (N.D. Cal.

25  Sept. 16, 2014) ("There is no guiding authority on what exactly

26

27       [7]   The Court's determination makes it unnecessary to address
   Plaintiff's assertion that blood tests on various dates from October
28  2010 to June 2012 show that Plaintiff did seek medical treatment for her
   anemia (see Joint Stip. at 9).

constitutes 'conservative' or 'routine' treatment."); <u>Boitnott v.</u>
<u>Colvin</u>, 2016 WL 362348, *4 (S.D. Cal. January 29, 2016) (explaining that
"[t]here was no medical testimony at the hearing or documentation in the
medical record that the prescribed medication constituted 'conservative'
treatment of [the plaintiff's] conditions," and that the ALJ "was not
qualified to draw his own inference regarding whether more aggressive
courses of treatments were available for Plaintiff's conditions").
There is some evidence in the record that Plaintiff's treatment for her
kidney stones, at least, was not so conservative.  At the hearing, the
ALJ did not ask Plaintiff why her treatment for her kidney stones,
anemia, hypertension, asthma and sinus problems was conservative, or why
she had not obtained surgery or other treatment for her sinus problems.
Finally, the ALJ's "conservative treatment" credibility determination
solely concerned Plaintiff's testimony concerning her kidney stones,
anemia, hypertension, asthma, and sinus problems; it did not relate to
Plaintiff's testimony concerning her leg pain, foot pain, hand pain,
wrist pain, musculoskeletal pain, and fatigue.

Fourth, although the ALJ also found that there was a lack of
objective medical evidence supporting Plaintiff's testimony concerning
her symptoms and limitations (<u>see</u> AR 22-23), the lack of supporting
objective medical evidence cannot, by itself, support an adverse
credibility finding.  <u>See</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th
Cir. 2001); <u>Tidwell v. Apfel</u>, 161 F.3d 599, 602 (9th Cir. 1998).

Fifth, to the extent that ALJ relied on the absence of "opinions
from treating or examining physicians indicating that the claimant is
disabled or even has limitations greater than those determined in this

1  decision" to find that Plaintiff was not fully credible (see AR 23)[8], the

2  ALJ's reason was improper.  Although in the assessment of a claimant's

3  credibility an ALJ may consider "observations of treating physicians and

4  examining physicians . . . about the claimant's symptoms and their

5  effects," see Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996), see

6  also Maier v. Comm'r of Soc. Sec., 154 F.3d 913, 915 (9th Cir. 1998)

7  ("The ALJ's explanation that [the claimant] was not credible as

8  supported by the clear and convincing reasons that [the claimant's]

9

10     [8]   Immediately below the ALJ's discussion about the medical
   evidence, the ALJ wrote:

11

12       As for the opinion evidence, the record does not contain
   any opinions from treating or examining physicians indicating

13     that the claimant is disabled or even has limitations greater
   than those determined in this decision.  Records in 2009

14     indicate Franklin Chu, MD, recommended that, due to kidney
   stones, the claimant be off work from July 27, 2009 to

15     November 19, 2009, with a later "off work" recommendation in
   January 2010, with a later April 2010 statement providing the

16     claimant could return to work on May 21st.  A statement of
   July 20th provided for "off work" until August 30th pending

17     medical work-up.   In 2011, another opinion on March 15th
   provides the claimant "is not available to work until upcoming

18     results of KUB on May 23rd, with a May 23rd opinion that the
   claimant was able to return to work June 28, 2011. (Ex. 10F).

19     (AR 23).

20   Following the above paragraph, the ALJ proceeded to discuss the
   opinions and/or findings of: (1) internal medicine consultative examiner

21   Robin Alleyne, M.D.(see AR 23-24, citing AR 408-12); (2) State Agency
   physician J. Hartman, M.D. (see AR 24, citing AR 57-65); and (3) State

22   Agency physician G. Taylor-Holmes, M.D. (see AR 24, citing AR 67-11).

23   Respondent asserts that the absence of opinions from treating or
   examining physicians indicating that Plaintiff was disabled or even had

24   limitations greater than those determined in the ALJ's decision was a
   clear and convincing reason for partially discrediting Plaintiff's

25   testimony.  (See Joint Stip. at 14).

26   However, it does not appear that that reason was a basis for the
   ALJ's adverse credibility determination, because the ALJ began the

27   paragraph with "[a]s for the opinion evidence," and because the ALJ
   merely presented the opinions and/or findings of the treating physician,

28   the examining physician, and the State Agency physicians (without
   stating how they contradicted Plaintiff's testimony).

testimony contradicts most of the medical evaluations."), the ALJ's determination about Plaintiff's credibility was not based on a treating physician's or an examining physician's observations about Plaintiff's symptoms and their effects.[9]   Dr. Chu, who treated Plaintiff for her kidney stones from June 2009 to May 2011 (see AR 270-369, 399-404, 461-68), did not make observations about Plaintiff's symptoms and their effects which contradicted Plaintiff's testimony.  Moreover, contrary to the ALJ's assertions, it appears that the statements by Dr. Chu about Plaintiff's ability to return to work (see e.g. AR 465 [letter dated April 14, 2010, stating that Plaintiff "should be able to return to work on May 21st 2010"], 466 [prescription form dated July 21, 2010, stating that Plaintiff "will be off work until 8/30/2010"], 467 [prescription form dated March 15, 2011, stating that "[Plaintiff] is not available to work until upcoming results of KUB on 5/23/2011"], 468 [prescription form dated May 23, 2011, stating that "[Plaintiff] should be able to return to work on June 28, 2011"]) were not medical opinions.[10]   See 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical and mental restrictions.").  Moreover, it appears that the ALJ has mischaracterized a couple of Dr. Chu's statements.  The ALJ stated that Dr. Chu opined that Plaintiff

---

[9]    Since Respondent relies solely on the records of Dr. Chu to support the ALJ's purported reason (see Joint Stip. at 14-15), the Court discusses only Dr. Chu.

[10]    The Court is unable to locate in the administrative record Dr. Chu's other 2009 and 2010 records which the ALJ summarized (see footnote 8 above).

"could return to work on May 21st [2010]" and that Plaintiff "was able to return to work June 28, 2011." (AR 23).  However, Dr. Chu actually stated that Plaintiff "**should be** able to return to work" on May 21, 2010 (AR 465, emphasis added) and that Plaintiff "**should be** able to return to work" on June 28, 2011 (AR 468, emphasis added).  Those statements look more like recommendations than opinions about Plaintiff's ability to work.

**B.   Remand Is Warranted**

     The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate.  McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman v. Apfel, supra, 211 F.3d at 1179-81.

     Since the ALJ failed to properly assess Plaintiff's credibility, remand is appropriate.  Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further

administrative proceedings would serve a useful purpose and remedy defects.  Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).[11]


**ORDER**


For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).


LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED: April 25, 2016

/s/

ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

---

[11] With the exception of the denial of Plaintiff's claim regarding the ALJ's consideration of anemia evidence, the Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." See Garrison v. Colvin, 759 F.3d 995, 1021 (2014). Accordingly, the Court declines to rule on Plaintiff's claim regarding the ALJ's failure to develop and consider the relevant evidence concerning Plaintiff's ability to perform her past relevant work as a tile decorator/painter. (See Joint Stip. at 15-19). Because this matter is being remanded for further consideration, this issue should also be considered on remand.